The first case this morning is Entertainment USA v. Moorhead. Good morning and may it please the Court, my name is Jason Coochmay and I'm the attorney for the Plaintiff Appellant Entertainment USA, Inc., DBA, One Wireless World, or for short OWW. This case is premised on a simple but a very important contract that was drafted by two non-attorneys. OWW was the wireless leader in Central Pennsylvania back in the early 2000s and Moorhead wanted to break into that market. And the testimony at trial confirmed that the best way for Moorhead to do that would be to associate with somebody who was already there, like OWW. Somebody who had physical locations, somebody with knowledge of the area and the industry, somebody who had people lined up with the financial wherewithal to actually open and operate a location. Locations are important, but without the right person they simply don't matter. I mean, if locations are all that mattered in this case, Moorhead could have just simply associated itself with a real estate broker who could have found them some empty storefronts and they could have put their stores there. But Moorhead needed more than that and that is why they entered into this referral agreement with OWW. And under that referral agreement, payment is required for my client in two circumstances. First, payment is due for all handoffs and referrals from OWW dating back to 2006. Notably, in the agreement itself there's no definition and there's no limitation on what constitutes a referral. The second instance that requires payment is for any locations that are approved following that date as a direct result of an OWW referral. So under this provision, it's not a location, but it is a location that is approved as a result of a referral. And then within each of these two instances under the contract, OWW is to be paid a referral fee for every activation and for every two-year upgrade. And it's important to remember that while payment are due, the payments that were due on the upgrades under the agreement specifically were limited to two-year upgrades, but there is no limitation whatsoever on the activation type or on the duration of the activation. And this all leads us into probably two of the most important issues in this case and on appeal, and that is simply, you know, what constitutes a referral under the agreement and what constitutes an activation. And the issue of what is a referral, I'm probably going to focus much of the time there, but that issue was decided on summary judgment, and the district court's decision limited a referral under the agreement only to the referral of an actual physical location. And that decision severely limited, really, the evidence that could be presented at trial. And in rendering that decision, the district court determined that the referral agreement was unambiguous. It looked at the four corners of the document, said it's unambiguous, and therefore, I'm not going to look at any of the extrinsic evidence that was before the court on summary judgment. And that decision is critical because if there was extrinsic evidence before the court, we had the drafters on both sides of the agreement for OWW and for Moorhead, and on many of these interpretation issues, they told us what was intended, and the district court's ruling was contrary to that intent. And when we're considering this issue on appeal, this interpretation issue, obviously the review is de novo, and the goal is to give effect to the party's intentions at the time the contract was made. As expressed in the contract. And if reasonable people find the agreement is subject to different interpretations, then it's going to be ambiguous, and the court would be required then to look at the extrinsic evidence to figure out what the parties meant. And on the interpretation matters, there's really on appeal, I think, three primary issues. And the first one has to deal with the determination that a referral is a physical location only. OWW contends that it would include not just a physical location, but it would also include the referral of an individual or an entity that thereafter opened a physical location. So is that how you all got to, what were the names of the fellows, Kapp and Trimble, and $17 million additional worth, in essence, when they went to work for Moorhead, you were entitled to a percentage of everything that they supervised? On summary judgment, that was an argument that was made. That's not being pursued on appeal as those two individuals, as we mentioned in the brief. But your summary judgment argument would reach those. It would reach those. It was broader. Kapp and Trimble were key vice presidents for OWW, and yes, we did refer them over. And you thought that that referral would mean that you guys would get paid a share of everything they supervised for Moorhead? Correct. A broader interpretation was argued on summary judgment. And on appeal, we are not arguing for Kapp and Trimble. We are arguing for the referral of an individual or entity that actually then opened and operated the store, as opposed to oversaw the store like Kapp and Trimble. And on that issue, on the physical location issue on summary judgment, the court really essentially just looked at the number of times the word location was used throughout the agreement, which was frequent. Instead of really focusing, we believe, on the provision that indicates when payment is due, which should be the controlling provision. And again, you've got the two instances where payment is required. You've got the handoffs and referrals dating back to January 106. Now that would include specific locations. We agree. That second instance, it says for any locations that are approved following that date as a direct result of an OWW referral. So if locations could only be, or if a referral could only be a physical location, there's really no need for that second provision at all. It's superfluous. And when we're interpreting this contract, the court needs to harmonize the different provisions. And again, if you look at that language on that second part, it says— Mr. Kruchma, could we talk about the activations issue? You seem to think that it was clearly erroneous for the district judge to rely on the party's course of dealings? Yes. Why is that? The party, when the judge issued the ruling on the activations, he basically said at trial you had Moorhead saying, well, here's our after-the-fact opinion on what it meant. OWW gave their after-the-fact opinion as to what it meant. Obviously nobody could agree, so I'm going to look at the course of dealing. That's in essence what the court did. But OWW presented more than just its opinion, so we don't believe it was appropriate to even look at the course of dealing in the first place. On that issue, OWW at trial provided testimony from both of the individuals that drafted that agreement. So, Chau Nguyen, who is the president and CEO of OWW, he testified regarding discussions he had with Larry Myers—Larry Myers was the VP for Moorhead who negotiated and drafted the agreement. In those discussions, Chau testified that Myers said, I want to leave the word— Right. There was conflicting evidence. Right? You've got that evidence about intent, but you've also got evidence that Moorhead presented about what they actually paid for during the two years that they were paying your clients. Right? There was, yes. And without objection from your client, correct? Yes. Essentially, what happened there was at this time, OWW, their bread and butter, so to speak, was their sprint relationship. That's where they were— I understand that, but this is on appeal. Yes. We've got conflicting evidence. We've got findings by the district court on that point. Why is it clearly erroneous to apply the interpretation that the parties applied in two years of conduct without objection from your client? Because, on appeal, Your Honor, we don't believe there was conflicting evidence. The court focused and just said, you just offered opinions, but we didn't offer opinion. We offered the testimony from the both drafters, from their drafter and from our drafter. So in our opinion, you don't even get to the course of dealing because there was no conflicting evidence or conflicting opinion. Could I ask you about damages? Of course. Did you ever tell the district judge what you think is the right number under the judge's interpretation of the contract? Yes. That would have been— When and where? Well, we were seeking the amount that was reflected in the damages chart as a whole, which was the $2,282,550. That's Exhibit 33? Yes, I believe that is correct. How do you get that number, given the district judge—I mean, I look at that—I see a lot of different numbers on that chart. Yes, Your Honor. And you seem to take the approach on appeal that the district judge should have looked at that chart after his interpreting the contract and figure out what number to award. Well, the chart has every—again, going into trial— What should—I understand the problem you faced with a number of different issues, but did you ever give the district judge a number based on his interpretation of the contract? Well, we didn't know who a referral was until after the trial and he told us who he felt the referral was. Did you ask him after he issued his findings? No, Judge, you're wrong. Here's the number. You haven't told us a number, as near as I can tell. We did not file a motion to reconsider or a motion like that, no, with the trial court. But there are only—there are 1, 2, 3, 4, 5, 6, 7, 8, 9, 10—14 different entities that we contend were—had locations that were referred, and each one of those is itemized and the specific dollar amount for each one is reflected on this summary. Where are the dollar amounts for each entity? If we start at the beginning, at the top, John Forsythe, it says KC Wireless, you have under there, it says 2366, you see four of those entries. That is store 2366, and the trial court had this testimony to support this. Then we had documents for the time period of March 06 through May 2013, which is shown there where it says date of file. The next column shows— Where is date of file? If you look at the very top of the page, it would be the column going up and down, so it would be the first column after identifying John Forsythe. I see new act. Okay, just to the left of that. I don't see that on what I have. May I approach the bench? Sure. Yeah, sure. What are you looking at, sir? And please go to the microphone and tell us, okay? So it's recorded? Your Honor, I'm looking at the actual document that was tendered to the district court during the trial. And do we have that in the record? That should be. Is that your appendix 194? Yes, it is. Okay, I—perhaps with a magnifying glass, but— Was that marked as an exhibit? Yes. What's the number of the exhibit? The damages summary I have shown here in the table of contents of the appendix was Trial Exhibit 83. That's the whole summary? It is the whole summary. It's the single page summary that I'm holding here in my hand. And that column includes things really other than new activations, does it? Includes a voice service, includes other equipment, includes bonuses to salesmen, things of that nature. Yeah, I'm— And that's not unbundled in any way? That's correct. I mean, I can't pretend that the document is more than it is. And there was testimony at trial, again, with the limitations with the PDF versus the Excel and the issues that came. The count did pick up some additional things. I certainly would not pretend that didn't happen. Is it correct that Exhibit 33, or maybe it's 83, I don't know which you're talking about, but the defense has told us that there were—that the testimony at trial admitted that there were errors in that document, those calculations, is that right? Yes, and I think that's what he was just alluding to there, that because the document was not produced in the Excel format, if it were with the click of a button, you could have had a precise figure. Instead, it was PDF, and you either had to literally count millions of characters or you had to do a count. I mean, you tried to convert it to Excel, but failed. So for example, on the upgrades, he did assert— If I could just—I'd like to ask you to respond to a point that the defense made in their briefs that I didn't see a response in your reply, which was that this PDF Excel issue and discovery that you've emphasized on appeal actually was contested only with respect to some DISH network activations that don't seem to be at issue on appeal. And the whole controversy arose three years before trial and without you all having complained about the PDF production. Yes, the specific oral argument that we had on the PDF versus Excel issue did deal with the production of DISH network documents, and the judge made it very clear during that hearing that you're going to get PDF documents, and basically you're going to like it, and you're going to— And you had three years to work with those documents before trial. I don't recall off the top of my head. Documents were produced at different dates all throughout the course of the litigation. But on the chart, for example, on the upgrades, under the contract, we're entitled to recover damages for two-year upgrades. There was testimony that that perhaps picked up some one-year upgrades as well. However, the testimony at trial confirmed that one-year upgrades actually represent less than 1% of the upgrades in any given store, and that testimony was from their own agents. And with the standard on damages being you only have to prove them with reasonable certainty, not mathematical certainty. So if we were to agree with the district judge's interpretation of the contract, what amount should be awarded? On the—it depends where we're going, for example. Total. Total. I'll just go back on the activations, for example. If we agree with the district judge's interpretation of the contract, what amount should be awarded? I do not have that number calculated as I'm standing here today. Okay. But what I can say, again, on the activations, you know, all the issues on the averages and so forth really just went to the tier issue, and on the tier issue, again, even if you're not entitled to the highest figure on the tier, even if you only had one activation, we have the total activations, you would still be entitled to recover the $10 amount, and we have the total figures right there. What would that number be? Once again, I don't have that calculated. I can sit there and do that and respond perhaps during my rebuttal, which I see I have three minutes remaining. Are there any other questions I may address at this point? If not, I'd like to reserve the last three minutes for rebuttal. Thank you, Counsel. Okay.  Mr. Mitchell? May it please the Court. My name is Kevin Mitchell. I, along with Karen Moses, represent the appellee. I'd like to focus today on two central arguments. First, Judge Miller's ruling after a bench trial that OWW failed to prove damages, and then second, Judge Lozano's ruling at summary judgment that the referral agreement applies to the referral of locations. Judge Miller correctly found that OWW failed to prove damages with reasonable certainty, and OWW, on appeal, identifies no clear error. Specifically, OWW has not shown the standard that no reasonable fact finder could have found a failure to prove damages in this case. OWW failed short of this standard for two key reasons. First, Chow Winn was not a credible witness, and second, as this Court's noted, the documents accurately show the number of activations and upgrades by location. The Court can refer to pages 8 and 9 of Judge Miller's opinion for the comments on credibility of Chow Winn, but I would also note pages 16 through 20, where Judge Miller includes a detailed quotation from Chow's testimony, showing just how difficult it was to get him to answer a question. So Chow's credibility was plainly at issue at trial. But it's more than this. We can look at the actual documents, Exhibit 85 that became Exhibit 33 at trial. When we look at the contents of that exhibit, and we look at Chow's testimony regarding the contents of that exhibit, Exhibit 33 cannot show the number of activations and upgrades by month, by location. As Judge Miller noted, that exhibit includes non-referred locations, non-activations, meaningless averages, and bloated referral fees. OWW, I guess the central point on Exhibit 33 is that OWW failed to show the number of activations by month. Counsel has just acknowledged that during his testimony, Chow Winn stated that he used very broad search terms, and those search terms included commissions to salesmen and other topics that are not compensable under the agreement. So there is no way for this court, nor was there any way for Judge Miller, to look at Exhibit 33 and to establish the measure of damages. On the issue of activations- Before you move on from damages, did the defense propose any damages numbers? The only number defense proposed would have been found at trial would have been that exhibit, Exhibit 33. And what did you propose from that exhibit? Well, Moorhead proposed not Exhibit 33. We submitted Exhibit F, and Defendant's Exhibit F, there is trial testimony regarding the preparation of Exhibit F. Moorhead used the same Excel spreadsheets for the original location that OWW had. Moorhead reviewed the documents, identified on a month-by-month basis the number of activations and the number of upgrades. It's noteworthy here on the issue of the Excel versus the PDF documents, OWW had the exact same documents. This was a decision that was made early on as the parties were negotiating in discovery. It really has nothing to do with trial. The fact of the matter is, OWW had the same documents. OWW could have produced Exhibit F by location, showing activations and upgrades by month. That's what the referral agreement calls for. Referral fees paid on a monthly basis based on the number of activations, and OWW could have prepared the exact same exhibit. OWW did not. So what does Exhibit F tell us? Do you all owe any money or not under the district court's view? No, Your Honor. Exhibit F showed the original locations and the locations that the parties agree were referred. And under Exhibit F, no additional fees are owed. And that is Moorhead's position. There is no evidence in the record to show any additional amounts are owed. Well, the plaintiff and the district judge seem to be both telling us there's at least some amount that might have been owed, but the plaintiff never actually provided any reliable number as to what that might be. That's a little different from your position. For example, at least a $10 minimum activation fee for some activations that you all had not paid for. Is that right? I don't think, well, based on the evidence, the court can't reason. Based on the court's findings, okay, about the meaning of the contract. Did I misunderstand that? The court found that no amounts were owed. That was the final judgment, but I thought that the judge had indicated, perhaps I've misinterpreted this, but I thought he was saying that at least there's a gap between what you all paid and what in theory might have been owed, but there was a failure of proof on the plaintiff's part to fill in that gap. Your Honor, maybe I misunderstood the question. The court does rest on a failure of proof at the end of the day. Yes. After concluding, though, that there probably was some additional amount owed, right? Judge Miller makes a comment that, yes, there could be additional amounts owed, but when we come back to it, Judge Miller was there to hear the testimony, he judged the credibility of the witnesses, he was able to look at the evidence, and the only evidence presented was that of Exhibit 33. This case had been pending for a little while. Well, what does Exhibit F show, though? Does it show that there was an amount owed under the theory given by, under the findings of Judge Miller? It does not show additional amounts were owed. The defendant prepared Exhibit F, consistent with our theory, and that was... Not with Judge Miller's findings. That's correct, Your Honor. So that was submitted leading up to trial, and that's the evidence that was presented. And there was no evidence in the record that that could establish any amounts that would have been owed. So given Judge Miller's findings, you did not submit a figure as to what would be owed. Is that right? Judge Miller did not accept all your proposed findings. Am I right? That is correct, Your Honor. All right. So on Judge Miller's findings, did you propose a figure in Exhibit F? No, Your Honor. We submitted that information before trial. So you could not look at Exhibit F in light of Judge Miller's findings and come up with a number? Your Honor, I would say yes, you could look at Exhibit F, because ultimately there was a failure of proof. That was actually the only evidence in the record showing actual monthly activations for 06 and 07. If I hear the Honor, Your Honor, are you separating? You're digging a hole for yourself. We're trying to find out if you submitted evidence that a finder of fact accepting Judge Miller's findings, all right, could look at your Exhibit F and say, that's what's owed. No, Your Honor, based on Judge Miller's findings, I could not look at Exhibit F. I'd like to turn unless there are additional questions. Along with this, I'm looking at page 34 of Judge Miller's order, where in the bottom line he says, even a reasonable estimate can't be achieved in this record, reasonable estimate of the damages. He said, one, worlds were bloated, and yours were stingy, and he couldn't make any determination what the damages were, right? That's correct, Your Honor. So you did give him some, as I understand in response to Judge Ripple's question, you did provide some damages estimate. Yes, Your Honor, Moore had produced evidence consistent with our theory, and that was presented. Even though we're defendant, we presented that evidence to the court. But absolutely, the court ruled in the end that there was no way, based on the court's recommendation. But one wireless bears the burden of proving the damages, right? Yes, Your Honor. I'd like to briefly turn to the referral issue, which is what Judge Lozano ruled in summary judgment. And ultimately, OWW argues that the referral agreement does not mean what it says, and that the agreement says something that it never says. Judge Lozano got it right. The referral agreement applies to the referral of locations. There's nothing in the agreement that applies to the referral of an individual, a store owner, a store manager. There are really two central reasons for that. First and foremost, the stated purpose of the referral agreement states that OWW is referring locations. And then the singular focus throughout the entire document is related to locations and focuses on locations. When we look at paragraph one, that's where Judge Lozano correctly began. That's the stated purpose of the agreement. The parties state they intend to compensate OWW for location handoffs. They intend to compensate OWW to offset a loss from adding another wireless carrier to their branded stores. And they intend to compensate OWW for locations referred directly to Moorhead. Location handoffs, branded stores, and locations referred directly, this is all language of locations. There is nothing in the agreement that talks about referral of an individual. This continues through the entire document. Paragraph two effectively restates paragraph one. And then as we continue through the document, there's discussion of how these locations are managed, referral fees, and most importantly on page two, there's a list of referred locations. There's not a list of referred dealers, not a list of referred store managers, it's a list of referred locations. So based on the plain language of the agreement, Judge Lozano correctly noted that the referral agreement should be limited as such to the referral of locations. Unless there are additional questions, I'd be happy to answer them, but I will go ahead and wait the rest of my time. I'd like to ask you a couple of quick questions if I could. You and Judge Miller disagreed about the duration of the Moorhead obligation to pay plaintiff. And that was a fact, that was an issue that was part of the trial, right? If I understand Judge Miller's analysis, at least there would be some locations that may still be in operation and still producing occasional activation fees, right? Yes, Your Honor, he makes a statement to that effect. Okay, and that would have continued even after trial. This goes to the accounting point that the plaintiff has sought. So one way to look at this might be to say, well, there is an ongoing duty. The judge has disagreed. You all stopped paying back at the end of 2008 or so, if I recall correctly, after about two years. The judge disagreed with you on that point, and perhaps there should be an accounting at least after trial. Now, Judge Miller decided not to order that, but tell us why that wouldn't be an appropriate remedy here. Well, it wouldn't be appropriate here because OWW is asking to start the process all over again. OWW is asking the court, after four years of litigation, document production, discovery, and the chance to go to a bench trial, OWW is asking the court to restart, to essentially start discovery all over again. All in the guise of an accounting. Exactly, Your Honor. After having an adequate remedy of law that was unsuccessful. Yes, Your Honor. Okay. Yes, Your Honor. And so this is not a case where the county is, there's a separate basis for it. There is an adequate remedy of law that OWW pursued for four years. They had an opportunity to receive the reports, and most notably, for all of the original locations, they received the Excel reports. There's a statement that they could not approve damages, but they had the same documents. They had the same documents that we used to produce Exhibit F. They could have done the work too. Thank you. Thank you, Your Honor. Thank you. Thank you, counsel. Mr. Kuchma. Yes, thank you. And that last question, or the second to last question, was one of the points that I was going to address on the whole accounting and the post-trial. The decision by the district court created post-trial payment obligations on behalf of Moorhead. And the accounting, whether you agree that an accounting should have been provided from the date of the referral to the date of trial, we had asked for two different time periods. And obviously, the second being the time of trial going forward. So as long as these stores are open, having activations, having upgrades, we need not only the payment, but we need the accounting so you can verify what activations and upgrades are actually existing. And this is no failure of discovery. These documents didn't exist at the time of trial. Right. That theory depends on, in essence, a very long-term obligation to pay, correct? We're going back 12 years? Correct. And do you want to address the Indiana precedents that say where you've got a contract with no termination provisions, that it's terminable at will? Well, I mean, our position on that was there is a built-in termination provision. It is payments are due so long as there is an activation and an upgrade. When there is no activation and when there is no upgrade, no payment is due. So if the store closes, or for whatever reason, there are no longer activations and upgrades, that's the trigger point. So that could go on for 50 years? Certainly could, yes. And that was contemplated, obviously, certainly by my client, and there was testimony in that regard when they entered into the agreement. And Mr. Mitchell was talking on the interpretation issues, again, focusing on the purpose language, and I'm not going to rehash everything, but our brief addressed the purpose of the agreement and the language and how that supports our position, but the one point I do want to reiterate here in rebuttal is that we have the specific provisions of the agreement that tell us when the payment is due. There are two circumstances when payment is due. Those are very specific, and the general provision talking about the purpose cannot override the specific language telling us when payment is due, and again, on the interpretation issues, the second part says that payment is due when a location is approved as a result of a referral. So that would include a referral that is made that leads to a location being opened. It would include a relocation, and we had a couple of those with Jordan Golab and Mr. Forsythe's E-Town store. We referred that store. It was in the referral agreement itself. We were paid on it. Nobody denies it was a referral. After a handful of years, they decided they wanted to move over here to a different location in the same store, but for the referral, they never would have had that, and in fact, Larry Myers, again, the individual who drafted and negotiated that agreement on behalf of Moorhead testified that he believes that relocation should be paid, so upon finding the agreement to be ambiguous, I mean, that's extrinsic evidence that needs to be considered and that was not considered by the district court, along with the third category, which would be new locations. So, for example, again, going up to Forsythe, the district court found that three of the locations were referred by OWW. At the time of summary judgment, Mr. Forsythe had 11 locations. Those other eight locations would never have existed but for the original referral. We didn't get to pursue those at trial, and part of our case is we're asking for it to be remanded. The summary judgment be reversed, case be remanded, so we can pursue the referrals that were actually made consistent with our interpretation of the agreement. Counsel, let me ask you, this is just a technical thing, not related. There was never, the transcript of the trial proceedings or depositions wasn't filed in this case, was it? Initially, no, I don't think, it was not prepared. In other words, you have reproduced them yourself, what was said, but there was no indication, it wasn't from the transcript itself. You are correct, Your Honor. All right, because there's no indication of who the speaker was and some other things on it, and I assume the court reporter never got paid for that, right? No, the court reporter was paid, actually the parties paid for the transcript well before the appeal was even filed because we utilized the transcript as part of filing the post trial, the proposed findings. But you just didn't file the transcript? The entire, well we had asked that the transcript be filed, yes, and it was not until, I think, later. It was not? Well, there was the subsequent order by the Seventh Circuit when the district court then filed the record, yes. Thank you. Thanks to both counsel, the case will be taken under advisement.